# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CA-01285-SCT

*OWENS CORNING*

*v.*

*R. J. REYNOLDS TOBACCO COMPANY; BRITISH
AMERICAN TOBACCO (INVESTMENTS) LIMITED,
f/k/a BRITISH AMERICAN TOBACCO COMPANY
LIMITED; BROWN & WILLIAMSON TOBACCO
CORPORATION, INDIVIDUALLY AND AS
SUCCESSOR BY MERGER TO THE AMERICAN
TOBACCO COMPANY; PHILIP MORRIS USA INC.,
f/k/a PHILIP MORRIS INCORPORATED; ALTRIA
GROUP, INC., f/k/a PHILIP MORRIS COMPANIES,
INC.; LIGGETT GROUP, INC., LIGGETT & MYERS,
INC., LORILLARD TOBACCO COMPANY; BATUS
HOLDINGS, INC., f/k/a BATUS, INC.; RJR
NABISCO, INC., BROOKE GROUP, LTD.;
AMERICAN BRANDS; FORTUNE BRANDS, INC.;
LOEWS CORPORATION; COUNCIL FOR TOBACCO
RESEARCH-U.S.A, INC., f/k/a THE TOBACCO
INDUSTRY RESEARCH COMMITTEE; AND THE
TOBACCO INSTITUTE, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 7/17/2001 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| COURT FROM WHICH APPEALED: | JEFFERSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | WALTER GARNER WATKINS, JR. |
| | ALEXANDRA FRANCOISE MARKOV |
| | NATHANIEL ALANDAS ARMISTAD |
| | TIM D. GRAY |
| | THOMAS GERRY BUFKIN |
| | DANIEL J. MULHOLLAND |
| | CARROLL RHODES |
| | RICHARD L. FORMAN |
| | WALTER G. WATKINS, III |
| | MATTHEW S. STEFFEY |
| | RICHARD A. BROWN |
| ATTORNEYS FOR APPELLEES: | MICHAEL B. WALLACE |

REBECCA L. HAWKINS
WALKER (BILL) JONES, III
STUART G. KRUGER
TIFFANEE N. WADE
JAMES L. SHANNON
WILLIE JAMES PERKINS
BRUCE R. TEPIKIAN
CRAIG E. PROCTOR
BRIAN A. JACKSON
STEPHEN E. SCHEVE
MARK C. CARROLL
JAMES E. UPSHAW
LONNIE D. BAILEY
WILLIAM F. RILEY
KEITH W. VAUGHAN
KURT D. WEAVER
MICHAEL W. ULMER
LEWIS W. BELL
ROBERT L. GIBBS
CHRISTOPHER A. SHAPLEY
ANDREA LA'VERNE FORD EDNEY
S. JONATHAN SILVERMAN
JAMES LAWTON ROBERTSON
MARK P. CARAWAY
PATRICK S. DAVIES
MARK E. LOWES
BROOKE FERRIS, III
VINCENT T. CHANG
THOMAS A. COOK
JESSE LEE HOWELL
DAVID L. WALLACE
SUSAN ST. DENIS
WILLIAM E. HOFFMANN
WILLIAM L. DURHAM, II
JON MARK WEATHERS
RICK NOTON
TRENT L. WALKER
JAMES LAWRENCE WILSON
ALEX A. ALSTON
JEFFREY P. HUBBARD
EDWARD BLACKMON
JOE R. COLINGO
RICHARD O. BURSON

RICHARD MARION TRULY
BRYAN HOWARD CALLAWAY
JOHN VANDERSTAR
PAUL TAYLOR

NATURE OF THE CASE:   CIVIL - TORTS-OTHER THAN PERSONAL
                      INJURY & PROPERTY DAMAGE

DISPOSITION:          AFFIRMED - 03/18/2004

MOTION FOR REHEARING FILED:

MANDATE ISSUED:

**EN BANC.**

**COBB, JUSTICE, FOR THE COURT:**

¶1.   This is an appeal from a grant of summary judgment in favor of the defendants, R. J. Reynolds

Tobacco Company, et. al. ("Tobacco Defendants"), in the Jefferson County Circuit Court. The original

suit was filed in 1996. Owens Corning was joined as a plaintiff in 1998. Partial summary judgment was

granted in favor of Tobacco Defendants in July 2000. In July, 2001, the trial court entered summary

judgment in favor of Tobacco Defendants based on the "remoteness doctrine" and directed entry of final

judgment against all of Owens Corning's claims pursuant to M.R.C.P. 54(b). Owens Corning timely

appealed this ruling presenting one issue for review:

> **WHETHER OWENS CORNING'S CLAIMS OF UNJUST ENRICHMENT/RESTITUTION, FRAUD, AND VIOLATION OF MISSISSIPPI'S ANTITRUST STATUTE ARE BARRED BY THE "REMOTENESS DOCTRINE."**

¶2.   Tobacco Defendants have cross-appealed, challenging unfavorable trial court decisions on the

issues of statute of limitations, laches, change of venue and production of "Bliley"[1] documents, only if this

---

[1]Bliley documents - The United States House of Representatives Committee on Commerce issued subpoenas on February 19, 1998 for approximately 39,000 documents identified in the matter of *State of Minnesota, et. al. v. Philip Morris, Inc., et al.* No. C1-94-8563 (2nd Judicial Dist., MN) as not protected by claims of attorney-client privilege because they may evidence crime or fraud.

3

Court reverses or modifies the summary judgment. Because we affirm the trial court's summary judgment, we do not reach the cross-appeal issues.

## FACTS

¶3.     This case was originally filed in 1996 by a single plaintiff, Ezell Thomas, in the Circuit Court of Jefferson County, Mississippi. Thomas, an admitted lifelong smoker, filed suit against, among others, R.J. Reynolds Tobacco Company, complaining that smoking Salem cigarettes damaged his health.

¶4.     In October of 1998, the circuit court granted Thomas's motion to amend his complaint to join 25 individuals and a corporation, Owens Corning, as plaintiffs. Owens Corning is a Toledo, Ohio, based Fortune 500 company that is the world's largest producer of building materials. Thomas's amended complaint also joined additional tobacco companies and asbestos companies as defendants. The 26 individuals complained that smoking and asbestos exposure damaged their health; Owens Corning, a former producer of asbestos materials, complained that the tobacco companies were liable for its expenditures on past and future asbestos claims where the asbestos claimants also smoked. Thus, Thomas's individual claim was transformed from an individual action against R. J. Reynolds and other tobacco companies to a mass action by 26 individual smokers against tobacco companies and asbestos companies and a "national action" by Owens Corning against the tobacco industry. The Owens Corning claims have since been severed from the individual plaintiffs' claims of the original suit. The subject of this appeal is the case between plaintiff-appellant Owens Corning and defendants-appellees Tobacco Defendants.

¶5.     Thomas's desire to join Owens Corning as a plaintiff rather than as an asbestos defendant is unusual. However, according to Thomas's amended complaint, Owens Corning had reached a settlement

---

After an initial bipartisan assessment of all documents submitted to the Committee on April 6, 1998, Chairman Bliley consulted with the Ranking Minority Member and ordered the public release of subpoenaed documents on the Committee's site on the World Wide Web on April 22, 1998.

agreement with the individual plaintiffs on their asbestos personal injury claims. As part of that agreement, Owens Corning agreed to pay Thomas, and each Jefferson County resident[2] asbestos claimant with whom it had settled, an additional $80,000 if it was successful in its action against the tobacco defendants. In addition, Owens Corning agreed to donate at least $1.5 million for educational scholarships in Jefferson County.[3] Considering Thomas's interest in Owens Corning's claim against Tobacco Defendants, it is not surprising that he desired to join Owens Corning as a plaintiff in his action.

¶6.     Owens Corning states that it has been required to pay compensatory damages, both by way of judgment and settlement, which ought to have been borne by Tobacco Defendants. Owens Corning avers several theories of liability based on Tobacco Defendants' wrongful conduct: indemnity, unjust enrichment/restitution, fraud, misrepresentation, intentional infliction of emotional distress, conspiracy to defraud and fraudulent concealment, and antitrust violations. In July, 2000, the trial court granted Tobacco Defendants' motion for partial summary as to Owens Corning's indemnity claim. In July of 2001, the trial court entered summary judgment in favor of Tobacco Defendants based on the "remoteness doctrine" and directed entry of the judgment against all Owens Corning's claims.

## DISCUSSION

¶7.     The standard for granting summary judgment is set forth in Miss. R. Civ. P. 56. We review de novo the granting or denying of summary judgment and examine all the evidentiary matters before us -- admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The burden of demonstrating that no genuine issue of fact exists is on the moving party. That is, the non-movant is given

---

[2]Owens Corning states that the term "Jefferson County residents" refers to residents of Jefferson, Claiborne, Copiah, and occasionally, Holmes Counties.

[3]In its brief, Owens Corning points out that it exercised its right not to donate the money because it did not reach a satisfactory settlement with *all* the Jefferson County claimants.

the benefit of the doubt. *McCullough v. Cook*, 679 So.2d 627, 630 (Miss. 1996). If, in this view, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, summary judgment should be entered in that party's favor. The party opposing the motion must be diligent and may not rest upon allegations or denials in the pleadings but must set forth specific facts showing that there are indeed genuine issues for trial. *Richmond v. Benchmark Constr. Corp.*, 692 So.2d 60, 61 (Miss. 1997). A motion for summary judgment is not a substitute for trial of disputed fact issues. Accordingly, the court cannot try issues of fact on a Rule 56 motion; it may only determine whether there are issues to be tried. *Dennis v. Searle*, 457 So.2d 941, 944 (Miss. 1984).

### Review of Asbestos-Tobacco Litigation History

¶8.     Efforts by asbestos companies to reduce their liability for lung disease, through the courts and legislatures, have been ongoing for over 20 years. *See* Kan M. Nawaday, Note, *Apportioning Asbestos-Tobacco Liability in Falise v. American Tobacco,* 88 Cornell L. Rev. 1142, 1145-46 (2003). Certain lung diseases, such as asbestosis and mesothelioma, are attributed exclusively to asbestos exposure, and even though there is a consensus that asbestos exposure may also cause lung cancer, doctors generally attribute lung cancer most significantly to smoking. *Id.* at 1146. Thus, asbestos companies have attempted to reduce their liability for lung cancer suffered by asbestos claimants through (1) apportioning fault to a plaintiff for contributing to his own injury by smoking,[4] (2) bringing separate contribution actions against the tobacco companies for combined injuries to claimants, and most recently (3) bringing direct actions against tobacco companies to recover legal and medical costs incurred due to wrongful conduct

---

[4]*See* ***Dafler v. Raymark Indus., Inc.***, 611 A.2d 136, 144 (N.J. Super. Ct. App. Div. 1992) (discussing decisions in several jurisdictions as early as 1985 allowing apportionment of fault to plaintiff smokers), *aff'd per curiam*, 622 A.2d 1305 (N.J. 1993).

6

of tobacco companies. These suits have found mixed success. Some courts have allowed reductions in damage awards to claimants based on contributory or comparative negligence of the claimant, but most have found against asbestos companies in the separate contribution actions. The contribution actions fail for the same reasons that individuals have not been successful against the tobacco companies: many jurisdictions do not allow separate contribution actions where a defendant was not named in the initial suit; and tobacco companies are not liable under strict liability doctrine, therefore, other theories must be proven. The direct action cases, as discussed below, have failed for lack of proximate cause.

¶9.     The tobacco companies' settlement with the States in 1997[5] initiated the most recent wave of cases. The Seventh Circuit calls these "me-too" cases. *International Bhd. of Teamsters, Local 734 Health & Welfare Trust Fund v. Philip Morris, Inc.*, 196 F.3d 818 (7th Cir. 1999).[6] The direct action cases have been based on fraud, misrepresentation, unjust enrichment, state and federal antitrust violations, RICO violations, and others. Although there have been some successes at the trial court level, none of these cases has been successful at the appellate level.

¶10.    Despite the asbestos industry's lack of success, there are public policy arguments supporting the concept that tobacco companies should contribute to the cost of medical care for lung disease. One such argument is that tobacco users should pay for their own health care. If tobacco companies were required to contribute to the health care cost burden, they would pass these costs on to the tobacco consumers, thus

---

[5]*See* Frank J. Vandall, *The Legal Theory and the Visionaries that Led to the Proposed $368.5 Billion Tobacco Settlement*, 27 Sw. U.L.Rev. 473 (1998).

[6]In his opinion for the court, Judge Easterbrook remarked: "States that sued tobacco companies have been promised more than $200 billion in settlement over a 25-year period. Awed by this success, health insurers (including ERISA welfare benefit funds) have filed me-too suits, contending that the tobacco producers must compensate the insurers for the costs of smokers' health care." *International Bhd. Local 734,* 196 F.3d at 820.

effecting this premise. Most commentators urge that this is a legislative responsibility, even though Congress has tried repeatedly and unsuccessfully to pass this type of tobacco bill.

## Remoteness

¶11. Owens Corning argues that Tobacco Defendants knowingly and intentionally engaged in fraudulent and tortious conduct designed to defraud the public, including companies such as Owens Corning, about the health risks of smoking and the true cause of lung disease. Owens Corning contends that a primary intended consequence of Tobacco Defendants' conduct was to cause Owens Corning to pay billions of dollars to litigate and resolve lawsuits by persons with lung injuries, caused at least in part, by smoking. Further, Owens Corning argues that by effectively shifting liability for smoking related disease to it, Tobacco Defendants have been unjustly enriched at Owens Corning's expense.

¶12. Notwithstanding the decision of the trial court, Owens Corning claims that Mississippi law allows it to bring claims of fraud, unjust enrichment, and violation of state antitrust laws against the Tobacco Defendants. Owens Corning charges that Tobacco Defendants are asking the court to ignore Mississippi law and adopt a foreign rule, the "remoteness doctrine," which has only been applied in cases distinct from this one. As Owens Corning concedes, the remoteness doctrine is nothing more than a context specific rule of proximate cause, and although Mississippi law already addresses principles of proximate cause in many contexts, the present case presents one context not yet considered by this Court.

¶13. Nine federal courts of appeals and several state appellate courts have weighed this issue and have rejected claims similar to Owens Corning's. The plaintiffs in these cases have included insurance companies, public hospitals, unions, health benefit funds, and other health care providers who sued tobacco companies to recover money expended to provide medical treatment to their plan participants for tobacco-related illnesses. In all of these cases, regardless of the theory of liability, the courts have determined that

injuries to these provider plaintiffs were either too remote to be compensable or were not proximately caused by the defendant's conduct.[7] The provider plaintiffs would not have incurred the expenses, and thus their injuries, but for the injuries sustained by their plan participants. Tobacco Defendants charge that Owens Corning does not and cannot allege any direct, non-derivative injury to itself; that all Owens Corning's claims result from financial losses it suffered on behalf of injured asbestos workers who smoked.

---

[7]*See Service Employees Int'l Union Health & Welfare Fund v. Philip Morris, Inc.*, 249 F.3d 1068 (D.C. Cir. 2001)(plaintiffs' alleged [fraud and RICO] injuries were too remote to be proximately caused by alleged conduct of tobacco companies); *Association of Washington Public Hospital Districts v. Philip Morris, Inc.*, 241 F.3d 696 (9th Cir. 2001) (tobacco firm's alleged unlawful conduct was not the proximate cause of the districts injuries); *Lyons v. Philip Morris, Inc.*, 225 F.3d 909 (8th Cir. 2000) (trustees "are essentially making subrogation claims"); *United Food & Commercial Workers Unions, Employers Health & Welfare Fund v. Philip Morris, Inc.*, 223 F.3d 1271 (11th Cir. 2000) (claims for fraud, conspiracy, breach of assumed duty were barred by doctrine of proximate cause); *Texas Carpenters Health Benefit Fund v. Philip Morris, Inc.*, 199 F.3d 788 (5th Cir. 2000) (loss suffered was too remote from the manufacture and sale of cigarettes to recover for alleged antitrust or RICO violations . . . funds' lawsuits constitute an illegitimate end-run around principles of subrogation); *International Bhd. of Teamsters, Local 734 Health & Welfare Trust Fund v. Philip Morris, Inc.*, 196 F.3d 818 (7th Cir. 1999) (claims dismissed based partially on remoteness) ; *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229 (2d Cir. 1999) (the economic injuries alleged were purely derivative of the physical injuries suffered by plan participants, and thus, were too remote for funds to have standing to sue tobacco companies); *Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc.*, 185 F.3d 957 (9th Cir. 1999) (alleged injury too remote for RICO claim); *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912 (3d Cir. 1999) (no proximate cause to support RICO, fraud, or special duty claims), *cert. denied*, 528 U.S. 1105 (2000); *Republic of Venezuela ex rel. Garrido v. Philip Morris Cos.*, 827 So.2d 339 (Fla. Dist. Ct. App. 2002) (Plaintiff did not have a direct independent cause of action against tobacco companies); *Steamfitters Local Union No. 614 Health & Welfare Fund v. Philip Morris, Inc.*, 2000 WL 1390171 (Tenn. Ct. App. Sept. 26, 2000) (plaintiffs' alleged injuries are too remote, as a matter of law, to permit recovery on antitrust, fraud, deceit, misrepresentation, conspiracy, and violation of the Tennessee Consumer Protection Act violations). *See also Health Care Services Corp. v. Brown & Williamson Tobacco Corp.*, 208 F.3d 579 (7th Cir. 2000) (plaintiffs may only proceed in subrogation claim) (connection between conduct and injury is too attenuated even under a relaxed standard of proximate cause); *Seibels Bruce Group, Inc. v. R.J. Reynolds Tobacco Co.*, 1999 WL 760527 (N.D. Cal. Sept. 21, 1999) (no standing absent showing of direct injury).

¶14.    Owens Corning concedes that the courts have generally adhered to the rule that insurer or other third-party provider claims may be brought only in a subrogation action.[8]  Instead, Owens Corning claims that its unjust enrichment, fraud, and antitrust claims constitute a  single, direct claim against Tobacco Defendants for harm done directly to it.  However, Owens Corning concedes that it would not be here today if there had been no injury to the smoking asbestos workers.  Despite Owens Corning's characterization that its claims are direct, we conclude that the claims hinge on the payment of damage awards to thousands of smoking asbestos claimants and are thus indirect.

¶15.    The distinction argued by Owens Corning is that it is not an insurer attempting to recover the costs of being an insurer from Tobacco Defendants.  Owens Corning points out that insurers spread risk and collect premiums to cover costs, and the insurers' costs for providing health care to smokers are already figured into the premium amounts.  Owens Corning argues that the cases cited by Tobacco Defendants simply prevent <u>insurers</u> from recovering these costs of doing business from the tobacco companies. Accordingly, because it is not an insurer, Owens Corning argues that these cases are not applicable.

¶16.    We reject Owens Corning's theory.  Although Owens Corning does cite *International Brotherhood Local 734*, in which the Seventh Circuit court discussed the role of insurance companies in spreading risk and collecting higher premiums from those who smoke, 196 F.3d at 823-24, there are several other courts of appeals and state appellate cases that reached the same conclusion with no discussion of the type of plaintiff involved or the recovery of costs through premium collections.  The plaintiffs in *Association of Washington Public Hospital Districts v. Philip Morris, Inc.*, 241

---

[8]*See* **Laborers Local 17**, 191 F.3d at 233 ("Ordinarily, plaintiffs' right to sue for damages would be subrogated to the rights of those individual smokers for whom they provided health care benefits. In other words, plaintiffs would stand in the shoes of the injured participants and recoup damages from defendants, as tortfeasors, only to the extent defendants were liable to the participants themselves.").

F.3d 696 (9th Cir. 2000), were attempting to recover unreimbursed costs for treating patients suffering from tobacco related illnesses. In *Seibels Bruce Group, Inc. v. R.J. Reynolds Tobacco Co.,* 1999 WL 760527 (N.D. Cal. Sept. 21, 1999), the plaintiff was an insurer of asbestos companies, not an insurer to individuals. The plaintiff was attempting to recover from unanticipated asbestos company loses, many of which were a result of unanticipated employee medical expenses, allegedly caused by a combination of asbestos and tobacco exposure. In these cases, the dispositive issue was one of proximate cause and the derivative nature of the plaintiff's injuries.

¶17.    The Second Circuit addressed the proximate cause issue in *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.,* 191 F.3d 229 (2d Cir. 1999). The court began its discussion of proximate cause by admitting that the topic is subject to much disagreement and confusion, and is one "always to be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy and precedent." *Id.* at 235 (quoting W. Page Keeton et al., Prosser & Keeton on The Law of Torts, § 42, at 279 (5th ed.1984) (quoting 1 Street, Foundations of Legal Liability 110 (1906)). The court maintained that proximate cause is essentially a legal tool for limiting the liability of a wrongdoer to those harms having a reasonable connection to the wrongdoer's actions, and that over time, courts have formulated liability-limiting "judicial tools" based on common law principles. Citing *Holmes v. Securities Investor Prot. Corp.*, 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992), in which the U.S. Supreme Court announced a policy based proximate cause test[9], the Second Circuit explained:

> Among these "judicial tools," one notion traditionally included in the concept of proximate causation is the requirement that there be "some direct relation between the injury asserted and the injurious conduct alleged." *Holmes,* 503 U.S. at 268, 112 S.Ct. 1311. For this

[9]Since *Holmes*, other courts have referred to the analysis of proximate cause policy considerations as the *"Holmes* factors" or the *"Holmes* test."

reason, "a plaintiff who complain[s] of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts [is] generally said to stand at too remote a distance to recover." *Id.* at 268-69, 112 S.Ct. 1311 (citing 1 J.G. Sutherland, A Treatise on the Law of Damages 55-56 (1883)); see also *AGC*, 459 U.S. at 532-33 & n. 25, 103 S.Ct. 897; *Anthony v. Slaid,* 52 Mass. (11 Met.) 290 (1846).

*Holmes* emphasized that although the direct injury test "is not the sole requirement of [proximate] causation, it has been one of its central elements." 503 U.S. at 269, 112 S.Ct. 1311 (citing *AGC*, 459 U.S. at 540, 103 S.Ct. 897). This language tells us that to plead a direct injury is a key element for establishing proximate causation, independent of and in addition to other traditional elements of proximate cause. Thus, the other traditional rules requiring that defendant's acts were a substantial cause of the injury, and that plaintiff's injury was reasonably foreseeable, are additional elements, not substitutes for alleging (and ultimately, showing) a direct injury.

*Laborers Local 17*, 191 F.3d at 235-36. The Second Circuit went on to state that a plaintiff must establish both foreseeability *and* direct injury, which are distinct concepts, and injuries which are wholly derivative of an injury to the property of a third-party, are too remote as a matter of law. *Id.* at 235-36. "Moreover, in light of the discussion of case law above, substituting the foreseeability test, in place of finding the existence of a direct injury, is error. As a general rule, proximate cause requires that both be present " *Id.* at 236. We agree.

¶18. Owens Corning argues that if the facts of this case were analyzed using the *Holmes* factors, proximate cause would be found. In *Holmes*, after it determined that proximate cause was required in a RICO claim, the U.S. Supreme Court explained the policy reasons for this requirement:

Although such directness of relationship is not the sole requirement of . . . causation, it has been one of its central elements, for a variety of reasons. First, the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors. Second, quite apart from problems of proving factual causation, recognizing claims of the indirectly injured would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, to obviate the risk of multiple recoveries. And, finally, the need to grapple with these problems is simply unjustified by the general interest in deterring injurious conduct, since directly injured victims can generally be

12

counted on to vindicate the law as private attorneys general, without any of the problems attendant upon suits by plaintiffs injured more remotely.

*Holmes*, 503 U.S. at 269. In *Holmes*, the Court used these three criteria to illustrate why the plaintiff's indirect claim could <u>not</u> be brought.

¶19.    Owens Corning argues that as for the first criterion, it has proffered detailed evidence of the damages and unjust enrichment caused by Tobacco Defendants' misconduct through expert reports based upon well-established statistical and epidemiological principles. As for the second and third criteria, Owens Corning explains that

> "the second and third *Holmes* concerns can be dismissed together as they stem from the same worry, irrelevant here; namely whether the correct plaintiff is bringing suit. … These concerns may make sense in the insurance context, but they do not apply here. Here, there is neither a concern for apportioning damages nor anyone else to vindicate Owens Corning's injuries."

Thus, Owens Corning has elected not to address the issue in criterion two pertaining to multiple recoveries and apportionment of damages to plaintiffs, nor criterion three, in which Owens Corning would need to show why it should be able to bring a claim against Tobacco Defendants when the individual claimants may not. In light of our recent decision in *Lane v. R. J. Reynolds Tobacco Co.*, 853 So.2d 1144 (Miss. 2003), which holds that the Mississippi Product Liability Act (MPLA) precludes all tobacco cases based on products liability, a claim that smoking caused the damage to the asbestos claimants would fail. We are not persuaded by Owens Corning's argument that proximate cause is found under the *Holmes* test in the present case.

## Proximate Cause under Mississippi Law

¶20.    Owens Corning first argues that there is well-established Mississippi law demonstrating that summary judgment based on proximate cause principles was clear error, and cites *Donald v. Amoco*

13

*Production Co.*, 735 So.2d 161, 174 (Miss. 1999) for the proposition that "causation is generally a matter for the jury." In *Donald*, Donald argued that the trial court improperly addressed foreseeability, which he claimed was an issue of fact for the jury, and this Court explained:

> While duty and causation both involve foreseeability, duty is an issue of law, and **causation is generally a matter for the jury**. Juries are not instructed in, nor do they engage in, consideration of the policy matters and the precedent which define the concept of duty. This Court has held that the existence vel non of a duty of care is a question of law to be decided by the Court. Therefore, the lower court properly decided a matter of law.

*Id.* at 174 (citations omitted & emphasis added). In *Donald*, we did not address Owens Corning's implied assertion that a case based on an issue of proximate cause must necessarily withstand a summary judgment motion, so that it may be decided by a jury. The issue of proximate causation, as opposed to actual causation, is generally a matter of law, which should be left in the hands of the court.

¶21.    Owens Corning argues that its claims of unjust enrichment, fraud, and state antitrust violations should be decided using existing principles of proximate cause under Mississippi law, and not be decided based on the never before used "remoteness doctrine." Although Owens Corning points to several Mississippi cases to support this contention, it falls short each time. *Delahoussaye v. Mary Mahoney's, Inc.*,783 So.2d 666 (Miss. 2001), is one such case cited as an "indirect" injury case. In *Delahoussaye*, defendant sold beer to a minor, who allegedly gave the beer to another minor. The second minor later injured the plaintiff in an automobile accident. Although the chain of causation in *Delahoussaye* involves several steps, it is a direct injury case; the plaintiff did not derive his claim from a third-party's injury.

¶22.    The issues in *Delahoussaye* involved the correctness of jury instructions concerning foreseeability as an element of proximate cause. The Court said:

14

Proximate cause of an injury is that cause which in natural and continuous sequence unbroken by any efficient intervening cause produces the injury and without which the result would not have occurred. Foreseeability is an essential element of both duty and causation. In order to establish liability by proving negligence on the part of [defendant], Delahoussaye must prove . . . that it was foreseeable that . . . the minor who bought the alcohol from [defendant], would share the alcohol with another minor who would negligently cause injury to Delahoussaye.

*Id.* at 671. Thus the issue of derivative or indirect injury as a bar to finding proximate causation did not surface in the Court's discussion of this case. Additionally, as discussed above, foreseeability and direct injury are distinct concepts, and substituting the foreseeability test in place of finding the existence of a direct injury, is error. *Laborers Local 17*, 191 F.3d at 235-36.

¶23. Owens Corning again points to *Donald* to establish that Mississippi law allows compensation for injury that is far removed from the original events of the lawsuit. *Donald* discusses foreseeability as an element of duty. In *Donald*, the plaintiff purchased property from owners who had contracts with oil companies to do oil well maintenance. The owners disposed of the oil field wastes on their property. Donald sued the oil companies. The trial court dismissed the case finding "any alleged negligent acts on the part of the Oil Company Defendants are too remote to the Plaintiff to give rise to a duty owed ..." *Id.* at 175 (quoting lower court)). This Court reversed on appeal finding that the oil companies did owe a duty to the plaintiff. Obviously, the issue in *Donald* was not one of indirect injury or even causation, and in citing this case as support for its contention that indirect injuries are compensable under Mississippi law, Owens Corning has misconstrued the case.

¶24. Relying on *Choctaw, Inc. v. Wichner*, 521 So.2d 878 (Miss. 1998), and *Daulton v. Miller*, 815 So.2d 1237 (Miss. Ct. App. 2001), Owens Corning argues that Mississippi law allows compensation for derivative injuries through loss of consortium claims. This is true, but these cases are very clear that the

plaintiffs in these actions stand in the shoes of the injured third-party, subject to all defenses that would have been available against the injured person. *Choctaw*, 521 So.2d at 881. This is no different than what the courts of appeals have said and that Owens Corning concedes: third-party recoupment claims must be brought as subrogation actions. This is because the alleged injury is too remote to be brought in direct actions. *See* *Texas Carpenters Health Benefit Fund v. Philip Morris, Inc.*, 199 F.3d 788 (5th Cir. 2000) ("funds' lawsuits constitute an illegitimate end-run around principles of subrogation.").

## Unjust Enrichment/Restitution

¶25. In support of its unjust enrichment/restitution argument, Owens Corning relies on *Fordice Construction Company v. Central States Dredging Company*, 631 F. Supp. 1536. (S.D. Miss. 1986), in which the federal district court denied a summary judgment motion against Fordice's unjust enrichment claim. The defendant in *Fordice* submitted the winning bid for a government contract that was to be awarded only to a qualified "small business." Fordice alleged that but for defendant's misrepresentation as to its status as a small business, Fordice would have won the bid; thus the defendant was unjustly enriched by the profit it would make from the job. The district court, sitting in diversity and applying Mississippi law, concluded that the unjust enrichment claim was viable under Mississippi law:

> Mississippi law provides that, in an action for unjust enrichment, the plaintiff need only allege and show that the defendant holds money which in equity and good conscience belongs to the plaintiff. The requirements of proof of unjust enrichment are neither technical nor complicated and, [plaintiff] can state a claim against Defendants on the basis that [defendants] were unjustly enriched because they received the profits [which] they should not have been permitted to [receive].

*Id.* at 1538-39 (citations omitted). Based on this, Owens Corning states that summary judgment denying its claims was plainly wrong. Owens Corning fails to mention that the *Fordice* court also made it clear that in order to prevail on its claim for unjust enrichment Fordice would have to prove both that defendants

16

were unjustly enriched, and that Fordice was entitled to the contract award. *Id.* at 1539. In the present case, Owens Corning would have to prove that Tobacco Defendants were liable for injuries suffered by the asbestos claimants, for which the claimants have been compensated by Owens Corning. As stated previously, Tobacco Defendants could not be held liable, based on our decision in *Lane*, 853 So.2d at 1144.

¶26.    Owens Corning also relies on *Omnibank of Mantee v. United Southern Bank*, 607 So.2d 76 (Miss. 1992), in which United Southern Bank (USB) brought an unjust enrichment action against Omnibank. USB purchased the assets of a branch bank from Omnibank. A bank officer who worked first for Omnibank at the branch, then for USB, made several improvident loans after becoming an officer of USB, which loans were later written off. The proceeds of one of these loans was paid to Omnibank. This Court held that USB did not have a cause of action against Omnibank, because Omnibank was not *unjustly* enriched by the officer's actions. Citing Restatement of Restitution § 14(1) (1936), the Court also noted that in the absence of a showing of wrongdoing, the plaintiff's cause is not unjust enrichment, and redress must be brought through "subrogation or some such theory." *Id.* at 92. Again, this is a direct injury case with no discussion of causation. Even if Omnibank had fraudulently procured payment from USB through USB's loan officer, this would have been a direct injury to USB by Omnibank. There was no third-party injury, therefore the issue of remoteness was never reached.

¶27.    Finally, with regard to unjust enrichment/restitution, Owens Corning appeals to "ideas of what justice demands," claiming that it has borne legal and medical costs for injuries cause by Tobacco Defendants' misconduct, and that affirming the trial court's judgment will reward Tobacco Defendants' dishonesty. It is this Court's view that a remedy of the magnitude requested here, based on this and other, possibly good, public policy reasoning is a task for Congress.

## Fraud

¶28.	Owens Corning argues that the trial court's grant of summary judgment on its fraud claim was based solely on its belief that Owens Corning could not satisfy the causation requirement. The elements of fraud are well established: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on the truth; (8) his right to rely thereon; (9) his consequent and proximate injury. *See, e.g.*, ***Martin v. Winfield***, 455 So.2d 762, 764 (Miss. 1984); ***Hamilton v. McGill***, 352 So.2d 825, 831 (Miss. 1977); ***Crawford v. Smith Brothers Lumber Co.***, 274 So.2d 675, 678 (Miss. 1973). Proximate causation must be proved. Owens Corning again relies on ***Fordice***, because both fraud and unjust enrichment claims were allowed to withstand the summary judgment motion. Because the injury to the plaintiff in ***Fordice*** was direct, not derivative, the concept of remoteness was not an issue. Therefore, ***Fordice*** does nothing to support Owens Corning's position.

¶29.	Owens Corning presents many compelling facts concerning Tobacco Defendants' wrongful and fraudulent conduct. But the summary judgment was determined based on remoteness of injury, not egregiousness of conduct. Owens Corning fails to supply any Mississippi cases that support its claim that Mississippi law would prevent summary judgment based on these facts. Therefore, Owens Corning's claims must fail based on remoteness of injury.

## Mississippi Antitrust Claims

¶30.	Finally, Owens Corning asserts that Mississippi's antitrust statute expressly provides recovery for their indirect injuries. Owens Corning's theory is that if consumers had available a wider variety of products and the truthful information about the relative dangers of specific cigarette products, all of which

18

would have been available in a competitive market in the absence of conspiratorial actions, smokers would have consumed cigarette products that, overall, were less harmful. Thus, Owens Corning claims that but for Tobacco Defendants' conspiracy, Owens Corning's damages would have been much less. Mississippi's antitrust law states:

> Any person, natural or artificial, injured or damaged by a trust and combine as herein defined, or by its effects direct or indirect, may recover all damages of every kind sustained by him or it and in addition a penalty of five hundred dollars ($500.00), by suit in any court of competent jurisdiction. Said suit may be brought against one or more of the parties to the trust or combine and one or more of the officers and representatives of any corporation a party to the same, or one or more of either. Such penalty may be recovered in each instance of injury. All recoveries herein provided for may be sued for in one suit.

Miss. Code Ann. § 75-21-9 (Rev. 2000). Owens Corning claims that considerations of "remoteness" are inapplicable here. Owens Corning adds that the remoteness doctrine has never been invoked in reference to an antitrust case.

¶31. Tobacco Defendants respond that since Owens Corning never smoked, purchased, or competed in the market for cigarettes, it cannot satisfy any of the basic requirements of injury and standing imposed by antitrust law. Tobacco Defendants cite a U.S. Supreme Court case, *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 60 L. Ed. 2d 931 (1979), which states that as a threshold requirement, a plaintiff must plead and prove injury to its "business or property;" personal injuries, or financial losses which derive from personal injuries are excluded. They also find support in several of the previously cited federal courts of appeals cases which found for the tobacco companies against plaintiffs' antitrust claims. *See Ass'n of Wash. Pub. Hosp. Dists.*, 241 F.3d at 705-06 (parallel "business or property" requirement in state statute barred financial claims based on smokers' personal injuries); *Laborers Local*, 191 F.3d at 241 (under parallel RICO "business or property" requirement, financial claims based on smoker's injuries are barred because "smoker's injuries are personal in nature"); *Oregon Laborers*, 185 F.3d at

19

968 (where state trade-practices act imposed parallel "business or property" requirement, claims based on smokers' injuries are barred because they "are clearly predicated upon 'personal injury'").

¶32.    Additionally, Tobacco Defendants argue that an antitrust plaintiff must plead and prove that it suffered not just financial injury but "*antitrust* injury" -- injury inflicted by the anti-competitive effects of the violation alleged.  "Antitrust injury" is "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." ***Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc***., 429 U.S. 477, 489, 97 S. Ct. 690, 50 L. Ed. 2d 701 (1977).  "Antitrust injury" is narrowly defined by the legislative purpose of preventing anticompetitive conduct -- i.e., conduct that restrains the trade of buyers or sellers within a particular market. *See **Atlantic Richfield Co. v. USA Petroleum Co.***, 495 U.S. 328, 334 (1990); ***Lake Hill Motors, Inc. v. Jim Bennett Yacht Sales, Inc.***, 246 F.3d 752, 756 n.2 (5th Cir. 2001).  There has been no showing of antitrust injuries here.

## CONCLUSION

¶33.    Based on the foregoing analyses, we affirm the trial court's grant of summary judgment in favor of Tobacco Defendants as to all of Owens Corning's claims.

¶34.    **AFFIRMED.**

**PITTMAN, C.J., SMITH, P.J., CARLSON AND DICKINSON, JJ., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.  WALLER, P.J., DIAZ AND GRAVES, JJ., NOT PARTICIPATING.**