SERVICE FIRE INS. CO. OF NEW YORK *v.* REED.

April 26, 1954

No. 39097          62 Adv. S. 12          72 So. 2d 197

*Allen & Allen,* Indianola, for appellant.

*Stanny Sanders,* Indianola; *P. J. Townsend, Jr.,* Ruleville, for appellee.

GILLESPIE, J.

In 1951 Roger Reed, the appellee, purchased a Pontiac automobile. Part of the purchase price was financed by Universal C. I. T. Credit Corporation, hereinafter

called U. C. I. T. The car was insured by Service Fire Insurance Company, hereinafter called Service Fire. U. C. I. T. was the agent of Service Fire. The car burned on March 17, 1952. After several conversations between the adjuster for Service Fire and Reed, a proof of loss was signed by Reed which contained a release upon Service Fire paying U. C. I. T. the balance owing it by Reed of $656.25 and a $43.75 bill to a garage which Reed owed. These payments were made by Service Fire. Reed filed suit, demanding judgment for the actual cash value of the car less the $700.00 paid for his account. The jury returned a verdict for $600.00, on which judgment was entered against Service Fire. Several questions are raised by this appeal. Additional facts are set out in discussing these questions.

1. Service Fire, in its answer, set up accord and satisfaction. It contended that there were serious doubts concerning the fire and after negotiations with Reed, the proof of loss and release were signed; that payment of the $700.00 therein provided was a full accord and satisfaction. Reed filed a statement in avoidance of the release, claiming that the release was obtained under threat of criminal prosecution for arson, and was void.

Stated briefly, and most favorably to Reed, since the jury found for him, the facts on the question of the alleged threats were these: Reed told the adjuster for Service Fire the car burned on Sunday. His son said it was Saturday. Because of this conflict, the adjuster told Reed that Service Fire had an F. B. I. man and they would find out Reed burned the car and put Reed in the penitentiary. Reed was scared they would take him away from his family. Reed was an ignorant farm hand. The adjuster made Reed believe Service Fire had a defense to the claim on the policy. The adjuster admitted he had no defense to the claim and admitted he did not have proof Reed burned the car. The proof of loss and release for $700.00, about half the value of the

claim, was signed by Reed because of fear engendered by threats of prosecution.

We hold that where a release is obtained by threats of criminal prosecution under such circumstances that the one executing the release is deprived of the free exercise of his will, such release may be avoided on the ground of duress. 17 Am. Jur., Duress and Undue Influence, Par. 11.

2. Service Fire next contends that Reed had no interest in the lawsuit because he had assigned his claim to Furchess Motor Company prior to filing suit. This issue was raised by the pleadings below. The circumstances were that on February 20, 1952 (this date being obviously an error and no doubt should have been March 20, 1952, which would be three days after the fire) Reed signed the following and delivered it to Furchess Motor Company:

"February 20, 1952

"Universal C. I. T.
Greenville, Mississippi

Gentlemen:

Please make the overage on my account payable to Furchess Motor Co. due to the Insurance loss on my 1949 Pontiac and mail this check to them so that it may apply on another car as a down payment.

Thank you very much,
/s/ Roger Reed"

Service Fire tendered evidence that Furchess Motor Company sold Roger Reed a car and accepted this alleged assignment as the down payment, the balance being financed through U. C. I. T.; that Reed kept this car for about ten months and never paid Furchess Motor Company anything. The manager of Furchess Motor Company testified for Service Fire. The proof showed without conflict that Furchess Motor Company never attempted to control in any way the negotiations between Service Fire and Reed, although its manager knew these

negotiations were in progress while it held the alleged assignment. Service Fire said in its pleadings that it did not know of this alleged assignment until after suit was brought by Reed. Nearly a year had passed between the date Furchess Motor Company got the alleged assignment from Reed before Service Fire even knew about it, another indication that Furchess Motor Company did not assume any control over the cause of action. Nor did Furchess Motor Company ask to be substituted as party plaintiff under Code Section 1448.

We do not assume to decide any right as between Reed and Furchess Motor Company, the latter not being a party to this suit and not being a necessary party.

The alleged assignment here is nothing more than a direction to pay over the check. There are no words indicating Reed intended to relinquish control over the chose in action if the check was not forthcoming. He did not relinquish control. Furchess Motor Company did not assume any control over the chose in action. For an assignment to be good in law one of the requisites is that the assignor must lose the right of control. The rule is laid down in 6 C. J. S., Assignments, Par. 41, p. 1089, as follows:

"To constitute an assignment there must ordinarily be a valid and perfected transaction between the parties wherein the intent to vest the assignee with a present right in the thing assigned is manifest, and there must be a present transfer of the assignor's right, which is so far complete as to deprive the assignor of his control over the subject of assignment."

We hold that there was no valid assignment of the cause of action.

After consideration of the other assignments of error, we deem it unnecessary to lengthen this opinion by discussing them.

Affirmed.

*Hall, Lee, Kyle,* and *Arrington, JJ.,* concur.