# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-IA-01170-SCT

*R. J. REYNOLDS TOBACCO COMPANY, BROWN &
WILLIAMSON TOBACCO CORPORATION, PHILLIP
MORRIS USA INC., THE CORR-WILLIAMS
COMPANY, AND FAYETTE SUPERMARKET, INC.*

**v.**

*URSULA R. KING, INDIVIDUALLY AND ON
BEHALF OF ALL WRONGFUL DEATH HEIRS AND
BENEFICIARIES OF MARY LEE LATHAM,
DECEASED*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/02/2004 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| COURT FROM WHICH APPEALED: | JEFFERSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | MICHAEL B. WALLACE |
| | REBECCA L. HAWKINS |
| | WALKER W. (BILL) JONES, III |
| | MARK C. CARROLL |
| | BRUCE R. TEPIKIAN |
| | MICHAEL W. ULMER |
| | LEWIS W. BELL |
| | CHRISTOPHER A. SHAPLEY |
| | ROBERT L. GIBBS |
| | ANDREA LA'VERNE FORD EDNEY |
| | BROOKE FERRIS, III |
| | RYAN JEFFREY MITCHELL |
| | THOMAS M. LOUIS |
| ATTORNEY FOR APPELLEE: | ROBERT C. LATHAM |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED & REMANDED - 06/30/2005 |
| MOTION FOR REHEARING FILED: | 08/04/2005; DENIED AND MODIFIED AT ¶18 - 03/02/2006 |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1. Mary Lee Latham ("Latham") began smoking cigarettes in 1964 at the age of 13. She continued smoking cigarettes until her death from lung cancer, approximately forty years later on September 20, 2001.

¶2. On December 30, 2002, Ursula R. King, individually, and on behalf of the wrongful death heirs and beneficiaries of the deceased, Mary Lee Latham (collectively "King"), filed suit against several manufacturers, distributors and retailers of cigarettes (collectively "RJR") in the Circuit Court of Jefferson County, Mississippi. In her well-pled complaint, King not only alleged that Latham smoked cigarettes from 1964 until 2001 and "had developed debilitating diseases as a result of cigarette smoking," King also alleged Latham's damages and wrongful death were proximately caused by RJR's: (1) fraudulent misrepresentation; (2) conspiracy to defraud; (3) negligent misrepresentation; (4) breach of express warranty; (5) breach of implied warranty of fitness; and (6) deceptive advertising.

¶3. King alleged ten causes of action in her complaint, including: (1) fraudulent misrepresentation; (2) conspiracy to defraud; (3) strict liability; (4) negligence; (5) gross negligence; (6) negligent misrepresentation; (7) breach of express warranty; (8) breach of implied warranty of fitness; (9) deceptive advertising; and (10) wrongful death.

¶4. On October 14, 2003, RJR filed a motion for judgment on the pleadings on behalf of all properly served defendants together with a memorandum in support thereof, thereby moving the court to dismiss the suit in its entirety based solely on the inherent characteristic defense

2

of the Mississippi Product Liability Act ("MPLA"), codified in Miss. Code Ann. § 11-1-63 (Rev. 2002).

¶5. King filed a response to RJR's motion for judgment on the pleadings and memorandum in support thereof on December 4, 2003. In this response, King argued the MPLA did not preclude her claims.

¶6. One March 11, 2004, the circuit court entered a memorandum opinion and order denying RJR's motion.

¶7. Thereafter, on June 7, 2004, the circuit court entered a supplemental order granting RJR's motion for judgment as to King's strict liability, negligence, gross negligence, breach of express warranty, and breach of implied warranty of fitness claims in light of this Court's decision in *Owens Corning v. R.J. Reynolds Tobacco Co.*, 868 So. 2d 331 (Miss. 2004). However, the trial judge denied RJR's motion for judgment as to King's fraudulent misrepresentation, conspiracy to defraud, negligent misrepresentation, deceptive advertising, and wrongful death claims. On August 6, 2004, this Court granted RJR's petition for interlocutory appeal, but denied King's cross petition for interlocutory appeal as untimely. *See* M.R.A.P. 5. Therefore, as King's cross petition was untimely filed, the issues raised therein will not be addressed by this Court.

¶8. On appeal, RJR raises the following singular issue:

> Does the inherent characteristic defense of Miss. Code Ann. § 11-1-63(b) (Rev. 2002), as interpreted in *Lane v. R.J. Reynolds Tobacco Co.*, 853 So. 2d 1144 (Miss. 2003), bar "any action for damages caused by" manufactured commercial cigarettes regardless of how the plaintiff labels the causes of action in the complaint?

3

¶9.     Answering this question in the negative, we affirm the judgment of the trial court and remand this case for further proceedings.

## DISCUSSION

¶10.     Since a motion for judgment on the pleadings under Mississippi Rule of Procedure 12(c) raises an issue of law, this Court's standard of review for the granting of that motion is de novo. *Hartford Cas. Ins. Co. v. Halliburton Co.*, 826 So. 2d 1206, 1210 (Miss. 2001). Therefore, this Court sits in the same position as did the trial court. *Bridges ex rel. Bridges v. Park Place Entm't*, 860 So. 2d 811, 813 (Miss. 2003). A Rule 12(c) motion is similar to a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *City of Tupelo v. Martin*, 747 So. 2d 822, 829 (Miss. 1999). On a Rule 12(c) motion, the allegations in the complaint must be taken as true, and the motion should not be granted unless it appears beyond any reasonable doubt that the non-moving party will be unable to prove any set of facts in support of the claim which would entitle the non-movant to relief. *Park Place Entm't*, 860 So. 2d at 813 (citations omitted).

### I.  Miss. Code Ann. § 11-1-63(b).

¶11.     "Products liability is the name currently given to the area of the law involving the liability of those who supply goods or products for the use of others to purchasers, users, and bystanders for loses of various kinds resulting from so-called defects in those products." W. Page Keeton et al., Prosser and Keeton on Torts § 95, at 677 (5th ed. 1984). "It may, infrequently, rest upon intent; but except in rare instances, it is a matter of negligence, or of strict liability." Willaim L. Prosser, Law of Torts 641 (4th ed. 1971).

4

¶12. RJR claims that all of King's claims, including the claims[1] not dismissed by the trial court, are within the scope of the MPLA, and thus, subject to the inherent characteristics defense of Miss. Code Ann. § 11-1-63(b). RJR argues:

> "Broadly speaking, the second issue is whether the [Mississippi Product [sic] Liability Act] bars all suits based on injuries that arise out of the use [of] tobacco products." **Lane v. R.J. Reynolds Tobacco Co.**, 853 So. 2d 1144, 1147 (Miss. 2003). The issue presented in this appeal is whether this Court's affirmative answer in **Lane** was as broad as its question. Stated differently, when this Court held that the inherent characteristic defense of Miss. Code Ann. § 11-1-63(b) "precludes all products liability actions against tobacco companies," did that mean that the statute precludes "all suits based on injuries that arise out of the use of tobacco products"? **Id.** at 1147, 1149. Because the inherent characteristic defense applies broadly to "any action for damages caused by" cigarettes, Miss. Code Ann. § 11-1-63, the answer to this question is necessarily "yes."

¶13. King argues the inherent characteristics defense does not apply, and the MPLA does not bar suits based on theories other than products liability. King asserts: "[T]he [t]obacco [c]ompanies attempt to convince this Court that there are no legitimate product[s] liability claims. Further the [t]obacco [c]ompanies argue that even if legitimate claims exist, it has complete immunity since the passage of Mississippi Code Annotated § 11-1-63 codifying the 'inherent characteristic defense.'"

¶14. The MPLA provided in pertinent part:

> *In any action for damages caused by a product* except for commercial damage to the product itself:
>
>> (a) The manufacturer or seller of the product shall not be liable if the claimant does not *prove* by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller:

---

[1] Fraudulent misrepresentation, conspiracy to defraud, negligent misrepresentation, deceptive advertising, and wrongful death.

(i) 1. The product was defective because it deviated in a material way from the manufacturer's specifications or from otherwise identical units manufactured to the same manufacturing specifications, or

2. The product was defective because it failed to contain adequate warnings or instructions, or

3. The product was designed in a defective manner, or

4. The product breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product; and

(ii) The defective condition rendered the product unreasonably dangerous to the user or consumer; and

(iii) The defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought.

(b) *A product is not defective in design or formulation if the harm for which the claimant seeks to recover compensatory damages was caused by an inherent characteristic of the product which is a generic aspect of the product that cannot be eliminated without substantially compromising the product's usefulness or desirability and which is recognized by the ordinary person with the ordinary knowledge common to the community.*

Miss. Code Ann. § 11-1-63 (emphases added).[2]

---

[2] The Legislature has since amended § 11-1-63. *See* 2004 Miss. Laws 1st Ex. Sess. ch. 1, § 3; 2002 Miss. Laws 3rd Ex. Sess. ch. 4, § 5. These amendments do not apply to this case.

¶15.    First, this Court never gave an affirmative answer in *Lane* that the MPLA *bars* all suits, but rather concluded: "State law *precludes* all tobacco cases that are *based on products liability*." 853 So. 2d at 1150 (emphases added). Clearly, this Court only stated that state law precludes all tobacco cases *based upon products liability*, not *all* tobacco cases, which could be based on other possible theories of recovery. Second, § 11-1-63(b) is commonly referred to as the "inherent characteristics defense" and is just that–a *defense* that must be pled and proven, rather than an outright *bar*.[3]

¶16.    The inherent characteristic *defense* in subsection (b) of § 11-1-63 does *not* bar "any action for damages caused by" cigarettes.

¶17.    First, the inherent characteristic defense applies only to a products liability action. One would not expect to see this defense pled in any other type of liability action. As the trial court dismissed the products liability claims, and King failed to timely appeal, no products liability claim is presently before the Court in the case sub judice.

¶18.    Second, as with any other affirmative defense, the inherent characteristic defense is a matter of proof. The burden rests upon the defendant, not the plaintiff, to prevail on an affirmative defense. *Pearl Pub. Sch. Dist. v. Groner*, 784 So. 2d 911, 916 (Miss. 2001) (citing *Marshall Durbin Cos. v. Warren*, 633 So. 2d 1006, 1009 (Miss. 1994)). Whether one accepts traditional requirements that the defendant carries the burden of proving the essential elements of any affirmative defense, or assuming arguendo the statute requires the plaintiff to

---

[3] RJR acknowledges that § 11-1-63(b) is a *defense* rather than a *bar*. In its brief, RJR states: "The inherent characteristic *defense* of Miss. Code Ann. § 11-1-63(b) . . . applies '[i]n any action for damages cause by' cigarettes.'" (Emphasis added).

prove her case to the exclusion of the elements enumerated, is of no consequence. The elements must be satisfied. Some of the questions that must be answered before a party may prevail include: (1) whether the plaintiff was harmed; (2) if harmed, was such harm caused by an inherent characteristic of the product; (3) if so, whether the inherent characteristic is a generic aspect of the product; (4) if generic, could the inherent characteristic have been eliminated without substantially compromising the product's usefulness or desirability; and (5) whether the inherent characteristic is recognized by the ordinary person with the ordinary knowledge common to the community. If all of these elements are not specifically established in the pleadings, issues remain for the fact-finder. Accordingly, a motion to dismiss on the pleadings should not be sustained. Subsection (b) of § 11-1-63 precludes certain, but not all, products liability claims of defective design or formulation.

¶19. The statute clearly contemplates suits may be brought under the statute. The language of § 11-1-63 uses words such as <u>requiring</u> <u>proof</u>, which presuppose that a plaintiff may file an action and offer proof on the issue of the defendant's liability, whether in response to a motion for summary judgment or at trial. The statute states that the manufacturer or seller "shall not be liable" unless the elements of the statute are met. Miss. Code Ann. § 11-1-63(a). Accordingly, the defendant shall not be liable if the facts warrant, or if the elements of the statute are not met. The statute does not preclude or bar an action, although it clearly creates what some may argue to be formidable obstacles for a plaintiff to overcome in order to prevail. Regardless of one's opinion, the statute did not create immunity from suit for tobacco companies. The rights afforded under the statute are available to all parties.

8

¶20. The statute is replete with a series of affirmative defenses, any one of which, if the defendant prevailed upon, could result in success to the defendants, *i.e.*, "shall not be liable." The statute even concludes with a catchall that the listed defenses were not meant to "eliminate any common law defense to an action for damages caused by a product" available to the defendant. Miss. Code Ann. § 11-1-63(a) & (h).

¶21. Because the inherent characteristic defense applies only to products liability actions, this issue is without merit.

## II. Mississippi Statute v. Texas Statute.

¶22. RJR argues that a broad definition of "products liability action" was intended by the Mississippi Legislature when it adopted § 11-1-63. Furthermore, RJR argues that the Texas products liability statute cited in *Sanchez v. Liggett & Myers, Inc.*, 187 F.3d 486 (5th Cir. 1999), is no broader than § 11-1-63.

¶23. The Texas Legislature defined a "products liability action" as:

> any action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, mis-representation, breach of express or implied warranty, or any other theory or combination of theories.

*Sanchez*, 187 F.3d at 489 (quoting Tex. Civ. Prac. & Rem. Code § 82.001(2) (Vernon 1997)).

¶24. Miss. Code Ann. § 11-1-63 contains no such definition. However, the defendants wish to impute this definition into "any action for damages." In its brief, RJR includes a copy of a newspaper article in an attempt to show the intent of the drafters in enacting § 11-1-63. However, because the statute is not ambiguous, this Court will not consider same. *See Allred v. Yarborough*, 843 So. 2d 727, 729 (Miss. 2003) (citations omitted) ("In considering a

9

statute passed by the legislature, . . . the first question a court should decide is whether the statute is ambiguous. If it is not ambiguous, the court should simply apply the statute according to its plain meaning and should not use principles of statutory construction."). To adopt the Texas definition into a Mississippi statute would require this Court to assume powers confided to another branch of government–the Legislature. *See* Miss. Const. art. 1, § 1. We decline to do so, and for good reason. *See **Rohrbacher v. City of Jackson***, 51 Miss. 735, 745 (1875) ("The representative body is entrusted with the responsibility of consulting the public interest and carrying out public policy by the enactment of laws. The power to review their fitness and wisdom does not belong to the courts.").

### III. *Owens Corning*.

¶25.    RJR asserts that the *Owens Corning* decision emphasizes the breadth of the *Lane* holding. RJR's reliance on *Owens Corning* is misplaced.

¶26.    *Owens Corning*, was an appeal from a grant of *summary judgment*. 868 So. 2d at 334. The trial court entered summary judgment in favor of tobacco defendants based on the "remoteness doctrine" and directed entry of final judgment against all of Owens Corning's claims. *Id.* Then-Justice, now-Presiding Justice Cobb, speaking for the Court concluded that Owens Corning's claims were indirect. *Id.* at 338. Justice Cobb noted that nine federal courts of appeals and several state appellate courts weighed this issue and rejected claims similar to Owen Corning's. *Id.* at 337-38 n.7. *See, e.g.*, ***Tex. Carpenters Health Benefit Fund v. Philip Morris, Inc.***, 199 F.3d 788 (5th Cir. 2000) (loss suffered was too remote from the manufacture and sale of cigarettes to recover for alleged antitrust or RICO violations . . .

10

funds' lawsuits constitute an illegitimate end-run around principles of subrogation); *Seibels Bruce Group, Inc. v. R.J. Reynolds Tobacco Co.*, 1999 WL 760527 (N.D. Cal. Sept. 21, 1999) (no standing absent showing of direct injury); *Republic of Venezuela ex rel. Garrido v. Philip Morris Cos.*, 827 So. 2d 339 (Fla. Dist. Ct. App. 2002) (Plaintiff did not have a direct independent cause of action against tobacco companies); *Steamfitters Local Union No. 614 Health & Welfare Fund v. Philip Morris, Inc*., 2000 WL 1390171 (Tenn. Ct. App. Sept. 26, 2000) (plaintiffs' alleged injuries are too remote, as a matter of law, to permit recovery on antitrust, fraud, deceit, misrepresentation, conspiracy, and violation of the Tennessee Consumer Protection Act violations).

¶27.    *Owens Corning* quoted the U. S. Supreme Court: "'[A] plaintiff who complain[s] of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts [is] generally said to stand at too remote a distance to recover.'"   868 So. 2d at 339 (quoting *Holmes v. Secs. Investor Prot. Corp.*, 503 U.S. 258, 268-69, 112 S. Ct. 1311, 1318, 117 L. Ed. 2d 532 (1992)).    Furthermore, Justice Cobb stated that the "summary judgment was determined based on the remoteness of injury, not the egregiousness of conduct."   *Owens Corning,* 868 So. 2d at 343.   Although *Owens Corning* cited *Lane*, it did not broaden the application of *Lane*.   *See id.* at 340.   The case sub judice is clearly distinguishable from *Owens Corning*, and as such, RJR's issue is without merit.

## CONCLUSION

¶28.    Any holding or language in *Lane* that is inconsistent or contrary to our holding today is expressly overruled.

11

¶29. For the foregoing reasons, the judgment of the Circuit Court of Jefferson County, Mississippi is affirmed, and this case is remanded to that court for further proceedings consistent with this opinion.

¶30. **AFFIRMED AND REMANDED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, CARLSON, GRAVES AND DICKINSON, JJ., CONCUR. DIAZ, J., NOT PARTICIPATING.**