# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-CA-02153-SCT

*CLAYTON HINTON*

*v.*

*NATE ROLISON*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/16/2013 |
| TRIAL JUDGE: | HON. JOHNNY LEE WILLIAMS |
| TRIAL COURT ATTORNEYS: | L. CLARK HICKS, JR. |
| | R. LANE DOSSETT |
| | MARY CLAY W. MORGAN |
| | GLENN GLOVER |
| | CARROLL H. INGRAM |
| | JENNIFER INGRAM WILKINSON |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | L. CLARK HICKS, JR. |
| | R. LANE DOSSETT |
| ATTORNEYS FOR APPELLEE: | JOHN G. CORLEW |
| | CARROLL H. INGRAM |
| | JENNIFER INGRAM WILKINSON |
| | ALLAN LEE ELKINS, JR. |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 10/15/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    The question before us today is whether a quitclaim deed acts to assign and transfer

a grantor's rights and interests retained in a deed of trust even when that grantor no longer

holds title to the property. We hold that it does, and so we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     In 2004, Clayton Hinton purchased a tract of real property to use as a used-car lot. He financed its acquisition with funds provided by Wells Fargo. Wells Fargo required a Deed of Trust as security for repayment of the contemporaneous promissory note Hinton executed. Page five (5) of the Deed of Trust (Rights and Remedies on Default—Foreclosure) provided that, in the event of foreclosure, any surplus was to be paid to the Grantor or his assigns. In 2007, Hinton conveyed his interests in the property to CZ Inc., a Mississippi corporation, subject to the debt secured by the Deed of Trust. In 2008, CZ Mississippi conveyed its interests in the property to CZ Florida. In 2009, CZ Florida conveyed its interests in the property to Hinton's children, Nathan Hinton and Seneca Eubanks. All transfers were subject to the aforementioned debt instrument. In May 2012, the loan matured and became immediately payable in full.

¶3.     In May 2013, Clayton Hinton and Nate Rolison executed a global Settlement Agreement which included Rolison agreeing to pay off the past-due Note and to obtain clear title by judicial foreclosure. On June 7, 2013, CZ Florida and Hinton's two children conveyed "all of their rights, title, and interest" by quitclaim deed to Rolison.[1] Wells Fargo instituted foreclosure proceedings, which resulted in a foreclosure sale on June 28, 2013. Rolison was the highest bidder, bidding $147,000 in excess of the amount owed on the Note and Deed of Trust. Hinton demanded the surplus as the grantor pursuant to the deed of trust. Rolison also demanded the surplus, claiming his quitclaim deed from Hinton's successors in interest entitled Rolison to the surplus as Hinton's assign under the deed of trust.

---

[1]At this point in time, Clayton Hinton had no interest in the property, and only those with an interest executed the quitclaim deed.

¶4.     Wells Fargo filed a Complaint in Interpleader in the Lamar County Chancery Court, asking the court to determine who was entitled to the surplus. In answering the complaint, Hinton agreed that he was not the record title holder, having conveyed the property to his children, and that his children had executed a quitclaim deed to Rolison. Hinton claimed the deeds failed to act as assignments of his rights under the Deed of Trust. Rolison filed a motion for judgment on the pleadings, arguing that Hinton's admission that he was not the title holder and admitting the deeds in Rolison's chain of title entitled Rolison to the surplus.

¶5.     Based on Hinton's admission, the chancellor found as a matter of law that the quitclaim deed to Rolison, coupled with the prior conveyances, acted as an assignment to Rolison of all of Hinton's rights and interests under the Deed of Trust. The chancellor granted Rolison's motion for judgment on the pleadings. Hinton filed a motion to amend his pleadings. The chancellor denied that motion and Hinton appealed.

## ANALYSIS

¶6.     On appeal, Hinton raises two issues. The first is whether—as a matter of law—the quitclaim deed acted as an assignment of his right to receive the surplus under the terms of the deed of trust; and the second is whether the chancellor erred in not allowing him to amend his answer.

¶7.     A motion for judgment on the pleadings under Mississippi Rule of Civil Procedure 12(c), which we review *de novo*, is similar to a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *See* ***Hartford Cas. Ins. Co. v. Halliburton Co.***, 826 So. 2d 1206, 1210 (Miss. 2001); ***R.J. Reynolds Tobacco Co. v. King***,

921 So. 2d 268, 271 (Miss. 2005). Under that rule, it must appear "beyond any reasonable doubt that the non-moving party will be unable to prove any set of facts" that would entitle "the non-movant to relief." ***Id.***

A. **The quitclaim deed and prior conveyances divested Hinton of his rights and interests in the property, assigning and transferring those rights and interests to Rolison.**

¶8. To whom the surplus is owed depends upon our interpretation of both the Deed of Trust and Section 89-1-43 of the Mississippi Code.[2]

¶9. Page one (1) of the Deed of Trust provides that "Grantor conveys to Trustee for the benefit of Lender as Beneficiary all of Grantor's right, title, and interest in and to the following described real property." However, Hinton retained certain interests pursuant to the Deed of Trust. "Until the occurrence of an Event of Default,[3] Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property." Page five (5) of the Deed of Trust (Rights and

---

[2]Miss. Code Ann. § 89-1-43 (Rev. 2011):

> Estates of any kind holden or possessed in trust for another, shall be subject to the like debts and charges of the person to whose use or for whose benefit they are holden or possessed as they would have been subject to them if the person had owned the like interest in the thing holden or possessed as he may own in the uses or trusts thereof, whether the trusts be fully executed or not. Said estates may be sold under execution at law, so as to pass whatever interest the cestui que trust may have; and, before a sale under a mortgage or deed of trust, the mortgagor or grantor shall be deemed the owner of the legal title of the property conveyed in such mortgage or deed of trust, except as against the mortgagee and his assigns, or the trustee after breach of the condition of such mortgage or deed of trust.

[3]Page four (4) of the Deed of Trust defines an Event of Default as, *inter alia,* "Borrower fails to make any payment when due under the indebtedness."

4

Remedies on Default—Foreclosure) provides that, in the event of foreclosure, any surplus was to be paid to the Grantor or his representatives, agents, or assigns. Page six (6) of the Deed of Trust provides that it would be "binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender . . . may deal with Grantor's successors . . . without releasing Grantor from the obligations of this Deed of Trust or liability under the indebtedness."

¶10.    The Deed of Trust effectuated a *present conveyance* of all of Hinton's "right, title, and interest," except for those interests explicitly retained, and anticipated that Hinton could convey those interests to another while remaining liable for the debt obligation. Section 89-1-43 provides that, prior to a sale under a deed of trust, the grantor "shall be deemed the owner of the legal title" except as against the trustee after breach of the condition of the deed of trust. *Black's Law Dictionary* defines 'deem' as "[t]o treat (something) as if (1) it were really something else, or (2) it has qualities that it does not have." *Deem*, Black's Law Dictionary (10th ed. 2014). Accordingly, legal title passed to the trustee pursuant to the deed of trust as soon as it was executed. The statute merely provides that Hinton, as the grantor, was to be treated as (deemed) the legal owner except as against the trustee after breach of the Deed of Trust. *See **Elder v. Jones***, 64 So. 212, 213 (Miss. 1914) ("Upon the maturity of a debt and a failure to pay, the legal title became absolute in the mortgagee.").

¶11.    The loan matured and became due in full in 2012. When payment was not forthcoming, and Hinton defaulted in paying the Note, Hinton breached the Deed of Trust. Therefore, he was no longer deemed the legal owner under the statute. The trustee had legal

title for the purpose of selling the property in order to secure the outstanding debt, not to forever hold the property as absolute owner. The record title owner (in this case, Rolison), as an assignee of the assigns of the mortgagor, retained interests in the property, such as the right to equitable redemption and the right to surplus from a foreclosure sale. *See* K.F. Boackle, *Mississippi Real Estate Foreclosure Law with Forms* §4:16 (2d ed. 2014) (Surplus from a foreclosure sale normally would go to "the mortgagor unless he has assigned the equity of redemption, such as by conveyance of the property."). *See also* **Heard v. Baird**, 40 Miss. 793, 796 (1866) ("The deed of trust from Johnson to Morrison vested the entire legal title in Morrison, and nothing remained in Johnson but a mere equity of redemption; and when he undertook, subsequently, to convey the same land to Gillespie, he conveyed to him only an equitable and not a legal estate.").

¶12.    Hinton admitted he was not the record titleholder because he had conveyed his interest and rights in the property to his children. CZ Florida and Hinton's two children subsequently executed a quitclaim deed to Rolison, which Hinton also admits.[4] Just what does a quitclaim deed transfer? According to Mississippi Code Section 89-1-39, a quitclaim deed "shall be sufficient to pass all the estate or interest the grantor has in the land conveyed." Specifically, the quitclaim deed at issue purported to transfer all "right, title, and interest" in the property conveyed and described in the deed of trust.

---

[4]Whether Hinton's attorney approved of the quitclaim deed to Rolison is irrelevant. The quitclaim deed between Rolison and Hinton's children (along with CZ Florida) was validly executed according to the uncontested pleadings. No one denies the validity of the quitclaim deed, nor does anyone claim it was fraudulently obtained.

6

¶13. When he executed the deed of trust, Hinton retained certain interests in the property—the right to possession, use, rents, and surplus at a foreclosure sale (*see* ¶ 9 *supra*). Subsequently, Hinton deeded away *all of his interest and rights* in the property to CZ Mississippi, which deeded *all of its interest and rights* to CZ Florida, which deeded *all of its interest and rights* to Hinton's children. Hinton's children deeded *all of their interest and rights* to Rolison.[5] Each successor and assign was bound by the language of the deed of trust (*see* ¶ 9 *supra*). When Rolison obtained the quitclaim deed in 2013, only the legal title had already passed to the trustee. The trustee could sell the property in order to secure the defaulted debt. However, a quitclaim deed conveys more than title to the estate itself; it also serves to convey interests and rights. Rolison obtained the interest in and right to claim any surplus at a foreclosure sale as Hinton's successor in interest through his chain of title.

¶14. An assignment requires (1) a valid and perfected transaction (2) with the intent to transfer a present right to the assignee and (3) a present transfer of that right. ***Serv. Fire Ins. Co. of N.Y. v. Reed***, 72 So. 2d 197, 199 (Miss. 1954). In granting Rolison's motion for judgment on the pleadings, the chancellor was provided with a copy of the quitclaim deed to Rolison as well as Hinton's answer in which he admitted he was no longer the record titleholder of the property. None of the litigants disputes the validity of Rolison's deed or his chain of title. While the deed from Hinton to CZ Mississippi was not attached to the

---

[5]CZ Florida also deeded any interest it had in the property to Rolison via quitclaim. CZ Florida had no interest in the property, having already deeded its interest to Hinton's children. No one disputes the chain of title to Rolison, subject to the Trustee's title pursuant to the Deed of Trust.

pleadings, its existence is evidenced in the uncontroverted pleadings.[6] In executing the deed, Hinton manifested his intent to transfer all his right, title, and interest in the property—as did each subsequent conveyance. Hinton failed to retain any rights or interest in the property. The execution and acceptance of the deed perfected a present transfer of Hinton's interest and rights. Those interest and rights remaining were then transferred to Rolison through his chain of title.

¶15.    The series of deeds in Rolison's chain of title satisfies the requirements of a valid assignment pursuant to *Reed*. Therefore, Rolison was entitled to collect the surplus resulting from the foreclosure sale pursuant to the Deed of Trust as Hinton's ultimate assignee and successor in interest.[7] *See* Boackle, *supra*, at §4:16 (Surplus from a foreclosure sale normally would go to "the mortgagor unless he has assigned the equity of redemption, such as by conveyance of the property."). *See also **Baird***, 40 Miss. at 796 ("The deed of trust from Johnson to Morrison vested the entire legal title in Morrison, and nothing remained in Johnson but a mere equity of redemption; and when he undertook, subsequently, to convey the same land to Gillespie, he conveyed to him only an equitable and not a legal estate."). Judgment on the pleadings was proper in this case because it appears beyond a reasonable doubt that there is no set of facts that Hinton can prove which would entitle him to the

---

[6]Rolison pled the existence of the aforementioned prior conveyances in his Answer, and nowhere in the record does any party contest the existence of the prior conveyances in Rolison's chain of title, nor does Hinton claim he or anyone else included any "restrictions, provisions, or limitations" in those prior deeds. (*See* Dis. Op. ¶23). Thus, it is an accepted fact for our purposes.

[7]"[A]ny balance remaining shall be paid to Grantor or to Grantor's representatives agents or assigns."

surplus, his conveyances having divested him of any interests or rights referenced in the deed of trust. *See **R.J. Reynolds Tobacco Co. v. King***, 921 So. 2d 268, 271 (Miss. 2005).

**B.     The trial court did not err in denying Hinton's motion to amend because the proposed amendments would not have affected the disposition.**

¶16.    Rule 15 of the Mississippi Rules of Civil Procedure governs amendments to pleadings. "On sustaining a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6), or for judgment on the pleadings, pursuant to Rule 12(c), leave to amend shall be granted when justice so requires . . . ." Motions for leave to amend are committed to the discretion of the trial court and are reviewed for an abuse of discretion. ***Webb v. Braswell***, 930 So. 2d 387, 392-93 (Miss. 2006). Leave to amend can be denied due to, *inter alia*, undue prejudice to the opposing party or futility of the amendment. *Id.* at 393. An amendment may be prejudicial "where it would burden the adverse party with more discovery, preparation, and expense." *Id.* at 394-95. Nor is a party "allowed to later complain on an issue, when that party 'had ample opportunity and time to amend its complaint, and has offered no justification for why it did not do so.'" *Id.* at 395 (quoting ***Hartford Cas. Ins. Co. v. Halliburton Co.***, 826 So. 2d 1206, 1219 (Miss. 2001)).

¶17.    The chancellor based his denial of Hinton's Motion to Amend on the fact that (1) Hinton failed to demonstrate how justice required allowing the amendment, (2) each of the three affirmative defenses Hinton proposed to add was known to him at the time of his original answer, and (3) "to permit amendment in this case would unnecessarily burden the adverse parties with additional expenses of litigation."

9

¶18.    Hinton sought to amend his complaint to add three additional affirmative defenses. However, the three proposed amendments all revolved around Hinton's assertions that he did not assign his rights to Rolison, assertions that were embodied in his original answer. They are assertions that were known to Hinton at the time of filing his original answer, and he offered the chancellor no justification for not amending his answer prior to judgment on the pleadings. The proposed amendments contain nothing new and therefore would not have affected the outcome of the Motion for Judgment on the Pleadings. The chancellor did not abuse his discretion in denying Hinton's motion to amend.

## CONCLUSION

¶19.    A quitclaim deed serves to transfer any and all interests and rights its grantor has in the property conveyed. Legal title passed to the trustee upon execution of the deed of trust, subject only to the statute's deeming Hinton (or his successor and assigns) the owner of legal title until default. Upon execution of the deed of trust, Hinton retained certain interests in the property—*inter alia*, the right to equitable redemption and a right to claim any surplus resulting from a foreclosure sale. In executing a deed and transferring ownership, Hinton manifested an intent to transfer all of his rights and interests to his successors in interest. It is uncontested that Rolison obtained a quitclaim deed to the property through a valid chain of title beginning with Hinton. The deeds were executed, transferred, and recorded. The transfers were perfected, rendering each a valid assignment. Even if everything in Hinton's answer is true, there is no set of facts nor principle of equity that would entitle Hinton to the surplus. Therefore, judgment on the pleadings in favor of Rolison was proper. The chancellor

did not abuse his discretion in failing to grant Hinton leave to amend his answer when each of Hinton's proposed amendments simply rehashed material already pled in his original answer and would not have changed the outcome of the judgment. Therefore, the chancellor's grant of judgment on the pleadings in favor of Rolison is affirmed.

¶20.    **AFFIRMED.**

**WALLER, C.J., LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR. DICKINSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING AND COLEMAN, JJ.**

**DICKINSON, PRESIDING JUSTICE, DISSENTING:**

¶21.    This case presents the narrow question of whether—from the pleadings—we can determine that quitclaim deeds from CZ Florida and Clayton Hinton's children assigned Hinton's contractual rights under a deed of trust to Nate Rolison. Because neither CZ Florida nor Hinton's children were parties to that deed of trust, I do not believe the question can be answered at the pleadings stage, so I respectfully dissent.

¶22.    A motion for judgment on the pleadings under Mississippi Rule of Civil Procedure 12(c), which we review *de novo*,[8] is similar to a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6).[9]  Under that rule, it must appear

---

[8] ***Hartford Cas. Ins. Co. v. Halliburton Co.***, 826 So. 2d 1206, 1210 (Miss. 2001) (citing ***City of Tupelo v. Martin***, 747 So. 2d 822, 829 (Miss. 1999)).

[9] ***R.J. Reynolds Tobacco Co. v. King***, 921 So. 2d 268, 271 (Miss. 2005) (citing ***City of Tupelo***, 747 So. 2d at 829).

"beyond any reasonable doubt that the non-moving party will be unable to prove any set of facts" that would entitle "the non-movant to relief."[10]

¶23. Even if one agrees with the majority that a quitclaim deed *ipso facto* transfers all contractual rights under a deed of trust, the record before us does not include any deed from Hinton to anyone. The majority cannot say from the pleadings what restrictions, provisions, or limitations were included in those deeds—because the majority has never seen them.[11] And because Hinton's children and CZ Florida could transfer only such interest as they received from Hinton, the majority cannot say that "beyond any reasonable doubt that [Hinton] will be unable to prove any set of facts" that would entitle him "to relief."[12]

¶24. But more importantly, I do not agree that quitclaim deeds—as a matter of law—assign all the grantor's rights under a deed of trust. When explaining the requirements for a valid assignment, we previously have stated:

---

[10] ***R.J. Reynolds Tobacco Co.***, 921 So. 2d at 271 (citing ***Bridges ex rel. Bridges v. Park Place Entm't***, 860 So. 2d 811, 813 (Miss. 2003)).

[11] The majority correctly notes that "[n]owhere in the record does any party contest the existence of the prior conveyances in Rolison's chain of title, nor does Hinton claim he or anyone else included any 'restrictions, provisions, or limitations' in those prior deeds." But it also is true that nowhere in the record does anyone assert or provide any evidence that the alleged prior conveyances took place, nor is there any evidence that there were no "restrictions, provisions, or limitations." The majority seems to believe that no evidence is necessary to establish a fact, so long as no one "contests the existence" of the fact. Under this remarkable theory of evidence, every case I have reviewed on this Court has established the fact that George Washington actually did chop down a cherry tree, because I have never seen in any record where any party has "contested" it.

[12] ***R.J. Reynolds Tobacco Co.***, 921 So. 2d at 271 (citing ***Bridges ex rel. Bridges v. Park Place Entm't***, 860 So. 2d 811, 813 (Miss. 2003)).

To constitute an assignment there must ordinarily be a valid and perfected transaction between the parties *wherein the intent to vest the assignee with a present right* in the thing assigned is manifest, and there must be a present transfer of the assignor's right, which is so far complete as to deprive the assignor of his control over the subject of assignment.[13]

¶25. The record clearly demonstrates that the quitclaim deeds were not intended to assign anything to Rolison. The settlement agreement included no requirement of a quitclaim deed. But as the time for the foreclosure approached, Rolison's attorney posted a letter to Hinton's attorney suggesting that they obtain a quitclaim deed. The purpose of the deed was explained in the letter:

> Given the fact that this Settlement Agreement addresses not less than three Chancery Court proceedings, it seemed to me to be prudent, and in keeping with the Settlement Agreement, to have CZ, Inc., a Florida corporation, Nathan Hinton and Seneca Eubanks to execute a quitclaim deed to Nate Rolison to the property in question *so that the Lamar County land deed records might be simpler for some future abstractor to follow*. If that is acceptable to you, I would appreciate your securing same.

In a follow-up email, Hinton's attorney stated:

> What was the purpose of the QC and the agreement to judicially foreclose? I need clarification from [Rolison's attorney] and, at this time, oppose this arrangement. I really do not care if some think there is no material difference, as this was not our deal.

¶26. From these excerpts, I think it was impossible for the chancellor to have concluded as a matter of law that the purpose of the quitclaim deed was to assign to Rolison the right under the deed of trust to receive the surplus.

---

[13] ***Serv. Fire Ins. Co. of New York v. Reed***, 220 Miss. 794, 799, 72 So. 2d 197, 199 (1954) (quoting 6 C.J.S. *Assignments* § 41) (emphasis added).

¶27.    So, because the record does not show that either of Hinton's children or CZ Florida had the right to the surplus, the chancellor erred by finding that they conveyed this interest to Rolison.  Further, even if they had that interest, I do not believe the quitclaim deed served to convey that interest.  So I respectfully dissent.

**KING AND COLEMAN, JJ., JOIN THIS OPINION.**