DICKINSON, Presiding Justice,
dissenting:
¶21. This case presents the narrow question of whether — from the pleadings— *1288 we can determine that quitclaim deeds from CZ Florida and Clayton Hinton’s children assigned Hinton’s contractual rights under a deed of trust to Nate Roli-son. Because neither CZ Florida nor Hinton’s children were parties to that deed of trust, I do not believe the question can be answered at the pleadings stage, so I respectfully dissent.
¶ 22. A motion for judgment on the pleadings under Mississippi Rule of Civil Procedure 12(c), which we review de novo,[8] is similar to a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6).[9] .Under that rule, it must appear “beyond any reasonable doubt that the non-moving -party will be unable to prove any set of facts” that would entitle “the non-movant to relief,”[10] ¶ 23. Even if one agrees with the majority that a quitclaim deed ipso facto transfers all contractual rights under a deed of trust, the record before us does not include any. deed from Hinton to anyone. The majority. cannot say from .the pleadings what restrictions, provisions, or limitations were included in those deeds-^because the majority has never seen them.[11] And because Hinton’s children and CZ Florida could transfer only such interest as they received from Hinton, the majority cannot say that “beyond any reasonable doubt that [Hinton] will be unable to prove any set of facts” that would entitle him “to relief.” [12]
¶24. But more importantly, I do not agree that quitclaim deeds — as a matter of law — assign all the grantor’s rights under a deed of trust When explaining the requirements for a valid assignment, we previously have stated:
To constitute an assignment there must ordinarily be a valid and perfected transaction between the parties wherein the intent to vest the assignee with a present right in the thing assigned is manifest, and there must be a present transfer of the assignor’s right, which is so far complete as 'to deprive the assign- or of his control over the subject of assignment.[13]
■ ¶ 25. The record clearly demonstrates that the quitclaim deeds were not intended to assign anything to Rolison. The settlement agreement included no requirement of a quitclaim deed. But as the time for the foreclosure approached, Rolison’s attorney posted a letter to Hinton’s attorney *1289 suggesting that they obtain a quitclaim deed. The purpose of the deed was explained in the letter:
Given the fact that this Settlement Agreement addresses not less than three Chancery Court proceedings, it seemed to me to be prudent, and in keeping with the Settlement Agreement, to have CZ, Inc., a Florida corporation, Nathan Hinton and Seneca Eubanks to execute a quitclaim deed to Nate Rolison to the property in question so that the Lamar County land deed records might be simpler for some future abstractor to follow. If that, is acceptable to you, I would appreciate your securing same.
In a follow-up email, Hinton’s attorney stated:
What was the purpose of the QC and the agreement to judicially foreclose? I neqd clarification from [Rolison’s attorney] and, at this time, oppose this arrangement. I really do not care if some think there is no material difference, as this was not our deal.
¶ 26. From these excerpts, I think it was impossible for the chancellor to have concluded as a matter of law that the purpose of the quitclaim deed was to assign to Rolison the right under the deed of trust to receive the surplus.
¶27. So, because the record does not show that either of Hinton’s children or CZ Florida had the right to the surplus, the chancellor erred by finding that they conveyed this interest to Rolison. Further, even if they had that interest, I do not believe the quitclaim deed served to convey that interest. So I respectfully dissent.
KING AND COLEMAN, JJ., JOIN - THIS OPINION.

. Hartford Cas. Ins. Co. v. Halliburton Co., 826 So.2d 1206, 1210 (Miss.2001) (citing City of Tupelo v. Martin, 747 So.2d 822, 829 (Miss.1999)).

. R.J. Reynolds Tobacco Co. v. King, 921 So.2d 268, 271 (Miss.2005) (citing City of Tupelo, 747 So.2d at 829).

. R.J. Reynolds Tobacco Co., 921 So.2d at 271 (citing Bridges ex rel. Bridges v. Park Place Entm’t, 860 So.2d 811, 813 (Miss.2003)).

. The majority correctly notes that "[n]o-where in the record does any party contest the existence of the prior conveyances in Roli-son’s chain of title, nor does "Hinton claim he or anyone else included any ‘restrictions, provisions, or limitations' in those prior-deeds.” But it also is true that nowhere in the record does anyone assert or provide any evidence that the alleged prior conveyances took place, nor is there any evidence that there were no "restrictions, provisions, or limitations.” The majority seems to believe that no evidence is necessary to establish a fact, so long as no one "contests the existence” of the fact. Under this remarkable theory of evidence, every case I have reviewed on this Court has established the fact that George Washington actually did chop down a: cherry tree, because I have never seen in..any record where any party has "contested” it.

. R.J. Reynolds Tobacco Co., 921 So.2d at 271 (citing Bridges ex rel. Bridges v. Park Place Entm’t, 860 So.2d 811, 813 (Miss.2003)).

. Sent Fire Ins. Co, of New York v. Reed, 220 Miss. 794, 799, 72 So.2d 197, 199 (1954) (quoting 6 C.J.S. Assignments § 41) (emphasis added).